NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHNNY R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees*.

No. 1 CA-JV 22-0056
FILED 1-19-2023

Appeal from the Superior Court in Mohave County
No.  L8015JD202107007
The Honorable Megan A. McCoy, Judge

**AFFIRMED**

COUNSEL

Harris & Winger, Flagstaff
By Sarah Snelling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee, Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**B R O W N**, Judge:

¶1        Johnny R. ("Father") appeals the juvenile court's order terminating his parental rights to his son ("Child"). For the following reasons, we affirm.

## BACKGROUND

¶2        Father and Samantha S. ("Mother") are Child's parents. In March 2021, Mother was visiting Arizona from California when she went into labor. She and Child tested positive for amphetamines after the birth. Child had difficulty feeding, so he required a six-day stay at the hospital.

¶3        The Department of Child Safety ("DCS") met with Mother at the hospital. She told DCS that Father was not there because he was "doing something for work." DCS then spoke with Father at his residence. He said he had been in Arizona for months to prepare for the baby's birth, but DCS noted that "no baby items were observed" other than a crib that was still in its box. After Child was discharged from the hospital, he was placed in foster care.

¶4        DCS promptly filed a petition for dependency. As to Father, DCS alleged (1) he was unwilling or unable to provide proper and effective parental care by neglecting Child's basic needs, (2) he had not been involved with the Child since birth and did not visit him in the hospital, (3) he had been advised to provide identification to facilitate a "rule out hair follicle and urine test" but had not done so, and (4) he could not properly care for Child due to suspected substance abuse "because common symptoms of methamphetamine use include erratic and paranoid behavior and impaired decision making."

¶5        In its initial dependency report, DCS reported that despite Father's denial of any recent substance use, he appeared jittery, spoke fast, did not answer the questions asked, and closed his eyes while being spoken to. DCS expressed concern that Father was "not an appropriate support" for Mother due to, among other things, his suspected substance use. DCS

2

was also concerned that Mother and Father were not parenting Mother's other two children, who were living in California with their maternal grandmother, the youngest of whom is also Father's child ("J.S."). Those children were the subject of a 2019 dependency case in California, which began when Mother tested positive for methamphetamine, amphetamine, and marijuana at J.S.'s birth.

¶6        After denying the allegations of the dependency petition, Father failed to appear at a pretrial conference and placement hearing. DCS requested that his non-appearance be deemed an admission to the allegations in the petition, and the juvenile court found Child dependent as to Father.

¶7        DCS offered both parents reunification services, including substance-abuse testing and treatment, supervised visitation, and family support services. The parents were both resistant to the services offered and missed about 50 to 60 percent of their scheduled visits with Child, which led to cutting the number of visits in half. The parents told DCS they missed visits due to transportation issues, but when DCS set up transportation, they declined to use it. Father participated in only one drug test, which had not been randomly scheduled; the result was negative. Father was unsuccessfully closed out of substance-abuse services twice due to his inaction and resistance to services.

¶8        In October 2021, DCS filed a motion for termination of Mother's and Father's parental rights based on chronic substance abuse and six months' time-in-care. *See* A.R.S. §§ 8-533(B)(3), (8)(b). Following a termination hearing held in January 2022, the juvenile court granted DCS's motion on both grounds and found that termination was in Child's best interests. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).[1]

---

[1]        In the termination order, the juvenile court stated that "[p]aternity has not been established." But Father is listed on the birth certificate, which means he is the presumptive father. *See* A.R.S. § 25-814(A)(3). For reasons that are not clear from the record, DCS moved to dismiss alleged father John Doe without having served him by publication and the juvenile court granted the motion. In this appeal, we address only the termination of Father's parental rights.

**DISCUSSION**

**¶9** To terminate parental rights, a court must find (1) by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven, and (2) by a preponderance of the evidence that termination is in the child's best interests. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286, ¶ 15 (App. 2016). We will affirm an order terminating parental rights so long as reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). If the evidence supports any one ground for terminating parental rights, we need not address whether sufficient evidence supports the other grounds. *Id.* at ¶ 3.

**A.     Six Months' Time-In-Care**

**¶10** To meet its burden of proving the time-in-care ground, DCS was required to establish that (1) Child was in an out-of-home placement for a "cumulative total period of six months or longer;" and (2) Father "substantially neglected or willfully refused to remedy the circumstances that caused the [Child] to be in the out-of-home placement, including refusal to participate in reunification services offered by [DCS]." A.R.S. § 8-533(B)(8)(b). Father argues the only circumstance that caused Child to remain out of his care was "DCS's unsubstantiated belief" concerning his substance abuse. He contends there is no evidence supporting DCS's allegations of substance abuse and the "dependency finding itself is tenuous" because it was based on his non-appearance.

**¶11** DCS explained its concerns about substance abuse at the outset of the case and included specific allegations of those concerns in the dependency petition. The significance of the court's dependency finding is not weakened by his failure to appear; instead, he is deemed to have admitted all allegations in the petition, including his use of methamphetamine. *See* A.R.S. § 8-844(F) (stating that if a parent does not appear at a pretrial conference, a court may find that the parent "is deemed to have admitted the allegations of the petition by the failure to appear"). Father's admission undercuts his contention that DCS's decision to require him to participate in substance-abuse testing was unsubstantiated. And he does not dispute that he displayed behavior consistent with a person who is under the influence of drugs.

¶12　　　　Moreover, the record supports the court's finding that Father refused to engage in substance-abuse services. Shortly after the birth of the child, DCS informed both parents that they needed to provide a "rule out" hair follicle and urinalysis test. Several weeks later, Father provided a urine analysis that "wasn't a random test, it was . . . "on a day that he agreed to go." He did not participate in any further testing, notwithstanding DCS's repeated requests. Concerning the hair follicle test, he initially suggested it could not be done because he lacked hair on top of his head. However, the DCS case manager later informed him the test could be done with facial or body hair. Even though Father had many months before the termination hearing to obtain a hair follicle test, he substantially neglected or willfully refused to do so. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 27 (App. 2010) (noting parent's failure to submit to drug testing for two months among evidence of ongoing substance abuse).

¶13　　　　Further, we reject Father's argument that the court improperly placed the burden on him to prove he was not using drugs. His reliance on *Donald W. v. Department of Child Safety*, 247 Ariz. 9 (App. 2019) is not persuasive. There, this court vacated a termination judgment in part because the dependency petition allegations were not supported by any evidence. *Id.* at 18, ¶¶ 27, 30. And the juvenile court in that case had been unable to identify any "circumstance" causing the out-of-home placement, which necessarily meant the court could not properly decide whether diligent efforts had been made or whether the parent had been able to remedy the circumstance. *Id.* at 17, ¶ 26. Given Father's admission to the allegations of the petition, coupled with evidence supporting DCS's concerns about his suspected substance abuse, the multiple problems outlined in *Donald W.* are not present here.

### B. Reunification Services

¶14　　　　DCS also had to prove it made diligent efforts to provide appropriate reunification services to Father. *See* A.R.S. § 8-533(B)(8), (D). (court must consider the availability of reunification services to parents and their participation in those services). DCS must provide services and give the parent an opportunity to engage in the services, *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 185, 192, ¶ 37 (App. 1999), but it is not required to wait an indefinite period before requesting termination of parental rights, *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). DCS has no obligation to provide services that would be futile or ensure parents participate in the services offered, but it must give them the time and opportunity to participate in programs designed to help parents

effectively parent. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶¶ 14–15 (App. 2011) (citation omitted).

¶15 Father argues that DCS failed to make diligent efforts to provide reunification services because it failed to provide sufficient documentation supporting the case manager's testimony about his lack of compliance with services. He argues that his counsel subpoenaed records from two agencies, both of which responded that they had no records for Father. The case manager testified, however, that Father was given two referrals and that both were closed out. The juvenile court was in the best position to resolve that conflict in the evidence, and we will not reweigh it on appeal. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (noting that the juvenile court is entitled to resolve conflicting evidence even when facts are sharply disputed). Moreover, Father did not testify that he was never given referrals to those agencies, and he fails to acknowledge that DCS records show he was not always referred to by the same name, which could explain the discrepancy.

¶16 The DCS case manager testified that both parents were offered referrals for several services, including substance abuse, but both parents "were very resistant to the services." She explained that although there were issues with Father's social security number, it did not prevent him from drug testing. The record supports the court's finding that DCS "made diligent efforts to provide appropriate reunification services" under the unique circumstances present in this case, which included parents "who were choosing not to engage, choosing not to call back, [and] choosing not to show up to appointments."

### C. Best Interests

¶17 Termination is in a child's best interests if either "(1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at 150, ¶ 13. The juvenile court may consider various factors concerning the presence of a harm or benefit. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990). The court's primary concern is the "child's interest in stability and security." *Alma S.*, 245 Ariz. at 150, ¶ 12 (citation omitted). The juvenile court considers the "totality of the circumstances existing at the time of the severance," *id.* at ¶ 13, including a parent's rehabilitation efforts, *id.* at 151, ¶ 15.

¶18 The juvenile court found that Child is in an adoptive placement meeting all his needs and that "another adoptive placement could be located should the current placement be unable to adopt." The

court also found that continuing Father's parent-child relationship with Child would be detrimental to him "because it would delay permanency, leaving the child to linger in care for an indeterminate period since the child does not have parents who are able to care for him." The court explained that Child does not have a strong bond with Father, and although severance is traumatic, Child is almost a year old and Father had made no progress in services, sobriety, or the ability to care for Child. The court thus concluded that termination would serve the child's best interests.

¶19 Father argues the court's adoptability finding is speculative but does not challenge the court's findings that continuation of the parent-child relationship would be detrimental. Because Father has waived any challenge to those findings, we need not address his argument on the adoptability finding. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G.*, 227 Ariz. at 234, ¶ 14 n.6 (recognizing that the failure to develop an argument on appeal usually results in abandonment and waiver of the issue). The evidence supports the court's best-interests determination.

## CONCLUSION

¶20 We affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:   AA

7